**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

APPLIED MEDICAL DISTRIBUTION
CORPORATION, a California
corporation,
            *Plaintiff-Appellant,*

                v.

THE SURGICAL COMPANY BV, a
Netherlands limited liability
company,
            *Defendant-Appellee.*

No. 09-55155

D.C. No.
8:07-cv-01420-
DOC-MLG

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted
September 4, 2009—Pasadena, California

Filed November 3, 2009
Amended November 17, 2009

Before: Raymond C. Fisher and Ronald M. Gould,
Circuit Judges, and Morrison C. England, Jr.,
District Judge.*

Opinion by Judge Gould

---

*The Honorable Morrison C. England, Jr., United States District Judge
for the Eastern District of California, sitting by designation.

15269

## COUNSEL

Richard J. Grabowski, Brian M. Hoffstadt (argued) and Edward S. Chang, Jones Day, Irvine, California, for the plaintiff-appellant.

Bruce H. Jackson (argued) and Jerry Salcido, Baker & McKenzie LLP, San Francisco, California, for the defendant-appellee.

## ORDER

The opinion filed on November 3, 2009, and published at __ F.3d __, 2009 WL 3583047, is AMENDED as follows:

On slip opinion page 14835, the final sentence ending on slip opinion page 14836, delete the following text: ", so Surgical's filing of the Belgian action, in violation of the forum selection clause, should not impede comity".

**IT IS SO ORDERED.**

## OPINION

GOULD, Circuit Judge:

Applied Medical Distribution Corporation appeals the district court's judgment in its diversity action against the Surgical Company BV denying injunctive relief that would have

prevented Surgical from pursuing its suit in Belgium for statutory termination damages allegedly available under Belgian law. The issue is whether the district court abused its discretion in denying the anti-suit injunction. We have jurisdiction under 28 U.S.C. § 1291. We reverse and remand for the district court to enter an anti-suit injunction.

## I

Applied Medical Distribution Corporation ("Applied"), a California corporation, and the Surgical Company BV ("Surgical"), a Netherlands limited liability company, entered a relationship whereby Surgical would purchase surgical supply products from Applied for distribution in Belgium, the Netherlands, and Luxembourg. The relationship began without a written agreement in 1999, and in 2000 the parties agreed in a written contract that Surgical would be the exclusive distributor of Applied's products in the three countries.

In 2006, the parties entered a new distribution agreement ("Agreement"), effective retroactively to January 1, 2005. The parties negotiated for more than a year regarding the terms of the Agreement. These terms include the following four provisions important here:

Paragraph 9(a): "Unless extended by mutual agreement in writing," the Agreement would terminate on December 31, 2007. The parties could also terminate the Agreement before then for any reason or no reason with 90 days notice. *See* Paragraph 9(e).

Paragraph 9(f), entitled "Limitation on Liability": "In the event of termination by either Party in accordance with any of the provisions of this Agreement, neither Party shall be liable to the other, because of such termination, for compensation, reimbursement of damages on account of the loss of prospective profits or anticipated sales or on account of expenditures, inventory, investments, leases or commitments in connection

with the business or goodwill of either Party. Termination shall not, however, relieve either Party of obligations incurred prior to termination."

Paragraph 10(a), entitled "Governing Law and Jurisdiction": "This Agreement shall be governed by and construed under the laws of the State of California. The federal and state courts within the State of California shall have exclusive jurisdiction to adjudicate any dispute arising out of this Agreement."

Paragraph 10(f), entitled "Legal Expenses": "The prevailing Party in any legal action brought by one Party against the other and arising out of this Agreement shall be entitled, in addition to any other rights and remedies it may have, to reimbursement for its expenses, including court costs and reasonable attorneys' fees."

Mr. van Schil, Surgical's CEO, claims that he objected to the forum selection clause, but signed the Agreement and accepted it in order to maintain the business relationship. He also claims that he thought the Agreement's choice-of-law and limitation-on-liability provisions would not limit Surgical's rights under Belgian law, but he did not assert that such an understanding was ever discussed with Applied.

Around June 2007, Applied notified Surgical that under Paragraph 9(a) of the Agreement, Applied would not be renewing the Agreement, which was then scheduled to expire on December 31, 2007. Surgical replied in writing on November 9, 2007, asserting that Surgical was entitled to protection under the Belgian Act of 1961 ("Belgian Act") in the form of compensation. Next, Applied filed a complaint seeking declaratory relief against Surgical on December 7, 2007, in the United States District Court for the Central District of California. Surgical thereafter filed suit in Belgium on January 29, 2008.

In its declaratory action in district court, Applied filed a motion for summary judgment—the motion underlying this appeal—requesting that the court: "(1) enjoin Surgical from pursuing relief in Belgium or any other non-California forum under non-California law; (2) declare that the Agreement terminated pursuant to its terms on December 31, 2007; (3) declare that 'goodwill indemnities' are precluded and that Surgical will take nothing due to termination of the Agreement; and (4) award Applied its costs, expenses, and attorneys fees."

Before addressing the anti-suit injunction, the district court made several holdings that are not appealed by Surgical. The district court held that "the dispute over goodwill indemnities arises out of the Agreement" because the determination of whether goodwill indemnities may be recovered requires passing on the applicability of Paragraph 9(f)'s limitation on liability for damages resulting from termination. The district court concluded that the choice-of-law and forum selection clauses in the Agreement were valid because they were reached through extensive, arms-length bargaining between sophisticated parties and there was no evidence of fraud or deceit. Therefore, the court held that "California law and a California forum apply to the instant dispute" and that "Belgian law is inapplicable to the interpretation of the Agreement."

The district court next held that the Agreement had terminated under its terms when Applied elected not to renew it, and concluded that according to Paragraph 9(f), Applied could not be liable "for compensation, reimbursement of damages on account of the loss of prospective profits or anticipated sales or on account of expenditures, inventory, investments, leases or commitments in connection with the business or goodwill of either Party." The district court specifically held that "goodwill indemnities are precluded and that Surgical shall take nothing due to the termination of the Agreement."

The district court rejected Surgical's argument that Paragraph 9(f) did not apply to goodwill indemnities. Surgical had argued that goodwill indemnities accrued "prior to the termination" of the Agreement and only happened to become due when the Agreement terminated. The district court rejected this argument because the only way that Applied could potentially incur goodwill *liability* would be upon a termination of the Agreement, and such liability, as the district court saw it, is expressly foreclosed by Paragraph 9(f).

Next, the district court declined to enjoin Surgical from pursuing relief in Belgium. The district court determined that "the Belgian Action alleges that certain pre-termination damages are due aside from termination-related goodwill indemnities and other termination-related damages," and that the Belgian claims under the Belgian Act were "potentially broader" than the issues under consideration by the district court. The district court did not explain further which claims were not dependent on the termination of the Agreement or otherwise did not "aris[e] out of th[e] Agreement" so as to be exempt from the contract's forum selection clause. Because it concluded that the Belgian claims were "potentially broader," the district court held that an anti-suit injunction would be inappropriate.

Finally, the district court held that Applied was entitled to its costs, expenses, and attorneys' fees because it prevailed on its motion for declaratory relief and the Agreement expressly provided for fees to a prevailing party.

The district court entered a final judgment on January 20, 2009. Only Applied appeals, and it appeals only the district court's denial of the anti-suit injunction.

## II

We review a district court's denial of an anti-suit injunction for abuse of discretion. *E. & J. Gallo Winery v. Andina*

*Licores S.A.*, 446 F.3d 984, 989 (9th Cir. 2006). A district court's factual findings in connection with a denial of an anti-suit injunction are reviewed for clear error. *Id.* The district court's interpretation of the underlying legal principles, however, is reviewed de novo. *Id.* When a district court makes an error of law, it is an abuse of discretion. *Id.*

**[1]** In *Gallo*, at various stages of our analysis, we held that a district court, in evaluating a request for an anti-suit injunction, must determine (1) "whether or not the parties and the issues are the same, and whether or not the first action is dispositive of the action to be enjoined"; (2) whether the foreign litigation would "frustrate a policy of the forum issuing the injunction"; and (3) "whether the impact on comity would be tolerable." *Id.* at 991, 994 (quotation marks and citations omitted).

Because we conclude that *Gallo* is controlling, a discussion of that case is helpful to illuminate our analysis. In *Gallo*, the large California winemaker Gallo entered a distribution agreement with Ecuadorian alcohol distributor Andina Licores. *Id.* at 987. The distribution agreement contained forum selection and choice-of-law clauses in favor of California. *Id.* Disputes arose between Gallo and Andina regarding some allegedly late shipments and whether Andina was an exclusive distributor of Gallo wine. Andina filed suit in Ecuador under an Ecuadorian "decree" that was intended to protect Ecuadorians who entered into distribution agreements with foreign entities. *Id.* After Andina engaged in procedural machinations in the Ecuadorian courts, Gallo filed suit in California state court, seeking declaratory and injunctive relief and damages; Andina removed the case to federal court. Of relevance to this case, Gallo filed a motion for a preliminary injunction restraining Andina from pursuing the action in Ecuador. *Id.* at 988. The district court denied Gallo's request for an anti-suit injunction primarily because the claims arose under different laws—one under California law and the other under the Ecuadorian decree. *Id.* at 991. We reversed.

In applying the first prong of the test outlined above, we determined that the issues were the same because both causes of action focused on whether the distributorship agreement had been breached. *Id.* Andina argued that the issues were not the same because an anti-suit injunction would deprive it of its broader rights under Ecuadorian law, but we rejected this argument: "First, it is not clear that Andina has claims under Ecuadorian law, as the contract contains a choice-of-law clause in favor of California. Second, to the degree that Ecuadorian law does apply, federal courts are capable of applying it to Andina's claims." *Id.* (citations omitted).

We then turned to considerations of policy and comity respectively. We stressed the strong policy in favor of enforcing forum selection clauses that the United States Supreme Court has developed over the years. *Id.* at 992 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991)). We explained that "[w]ithout an anti-suit injunction in this case, the forum selection clause effectively becomes a nullity." *Id.* Turning to comity, we reasoned that "where private parties have previously agreed to litigate their disputes in a certain forum, one party's filing first in a different forum would not implicate comity at all." *Id.* at 994. We pointed out that a rule that "any party seeking to evade the enforcement of an otherwise-valid forum selection clause need only rush to another forum and file suit . . . could also have serious deleterious effects for international comity." *Id.* We also dismissed the district court's reasoning that the Ecuadorian court was more competent to decide whether the Ecuadorian decree applied or not: "[T]he contract clearly contains a California choice-of-law clause; thus, the validity of the forum selection clause should be decided by California law, as the law of the contract, rather than by Ecuadorian law." *Id.* And, "to the degree Ecuadorian law is applicable, the district court is capable of applying it." *Id.*

## III

With this background on the applicable law as explained in *Gallo*, we address whether the district court abused its discre-

tion in denying the anti-suit injunction. Despite our general inclination to affirm when feasible on matters within a district court's discretion, we nonetheless conclude here that the district court did abuse its discretion in denying such relief. We in turn rest our decision primarily on the following two reasons: First, the district court applied the wrong legal standard by requiring that the claims in the domestic and foreign action be "identical" instead of engaging in the more functional inquiry concerning dispositiveness required by *Gallo*. Second, the district court relied on the clearly erroneous factual determination that Surgical's Belgian claims, other than goodwill indemnities, were available apart from termination. Because all of Surgical's claims, like goodwill indemnities, as a practical matter depend on termination of the Agreement, they all "aris[e] out of th[e] Agreement" and are subject to the forum selection clause. Under *Gallo,* the claims in the two actions are functionally the same and the first action is dispositive of the action to be enjoined in the sense that all of the Belgian claims fall under the contract's forum selection clause and can be litigated and resolved in the California action. Furthermore, we recognize California's strong policy in favor of enforcing forum selection clauses and note the comity concerns that would arise if a party to a contract containing a forum selection clause were permitted to proceed with duplicative litigation challenging the rightful authority of the contractually-designated forum court. Accordingly, an injunction restraining Surgical from pursuing its Belgian action is appropriate. A contrary result would effectively nullify the forum selection and choice-of-law clauses, thereby eliminating the certainty of a contractual result that is necessary to foster international trade and commerce.

## A

The first step under *Gallo* in deciding if an anti-suit injunction is appropriate is determining "whether or not the parties and the issues are the same, and whether or not the first action is dispositive of the action to be enjoined." *Gallo*, 446 F.3d

at 991 (citations omitted). Applied and Surgical argue a great deal about exactly how "identical" the issues must be between the domestic and foreign action. Confusion on this point is understandable because in *Gallo* the local action encompassed the sole issue raised in the Ecuadorian suit: breach of contract. *Id.* Surgical argues that *Gallo* requires that all the issues be identical in both actions. Applied argues that complete overlap between issues is not required and that *Gallo*'s holding disfavors litigants who attempt to evade forum selection clauses by bringing foreign actions.

We concluded in *Gallo* that "whether or not the parties and issues are the same, and whether or not the first action is dispositive of the action to be enjoined" are both part of the "first step" of the test. *Id.* (citations omitted). In cases like this where the parties are the same, whether the issues are the same and the first action dispositive of the action to be enjoined are interrelated requirements; that is, to the extent the domestic action is capable of disposing of all the issues in the foreign action and all the issues in the foreign action fall under the forum selection clause, the issues are meaningfully "the same." These interrelated requirements are sensible because the fundamental question the *Gallo* test is designed to address is whether a requested anti-suit injunction should issue under a contractual forum selection agreement. Moreover, our conclusion in *Gallo* that this first-step analysis was equivalent to both the Second Circuit's formulation (which asked if the domestic action was dispositive) and the First Circuit's formulation (which asked if the issues were the same) rested on our recognition that issues are functionally the same if one action is dispositive of the other. *Id.* (citing *Paramedics Electromedicina Comercial, Ltda v. GE Medical Sys. Info. Techs., Inc.*, 369 F.3d 645, 652 (2d Cir. 2004); *Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 18 (1st Cir. 2004)).

[2] Therefore, the crux of the functional inquiry in the first step of the analysis is to determine whether the issues are the

same in the sense that all the issues in the foreign action fall under the forum selection clause and can be resolved in the local action. Instead, the district court focused too narrowly on the fact that "not all of the issues are *identical*." (Emphasis added.) *Gallo* did not impose such a specific requirement. For example, it was irrelevant in that case that the Ecuadorian suit was under an Ecuadorian decree whereas the domestic action was based on California law, because both clearly depended upon the same alleged violation of a distribution agreement. *Id.*

Moreover, requiring issues to be precisely and verbally identical would lead to counterproductive, and perhaps unintended, results. For example, forum selection clauses would lose their reliability and robustness if a party could avoid them simply by waiting until a local suit is filed, and then file a foreign action that, despite being easily disposed of by resolution of the local action, is in some way not identical in form, a likely possibility because the verbal form of laws in different countries will inevitably differ. Such language differences across national systems, if they invariably allowed competing international litigation, would wholly frustrate the normal purposes of clauses selecting a forum and applicable law.

So-called globalization has enhanced the significance of international trade, and those in business who would trade across national lines confront many varying legal systems in different countries. If we do not give primacy to parties' choice of forum and choice of law, there will be insufficient certainty to foster international trade relations. Conversely, so long as the parties have no gross disparity in bargaining power, it is difficult to see how holding them to their agreed forum and law is not beneficent.

**B**

**[3]** There is no dispute that the parties are the same in this action and the Belgian action. Therefore, we turn to "whether

or not . . . the issues are the same, and whether or not the first action is dispositive of the action to be enjoined." *Gallo*, 446 F.3d at 991. We hold that the present action is dispositive of the Belgian action because all of the claims in the Belgian action "arise[ ] out of th[e] Agreement," are subject to the forum selection clause, and therefore must be disposed of in the California forum if at all. Therefore, the issues are functionally the same. Interpreting the forum selection clause, the district court already held that disputes concerning the applicability of the limitation-on-liability provision "aris[e] out of th[e] Agreement." However, the district court denied the anti-suit injunction on the basis of its conclusion that the issues involved in Surgical's Belgian action were not identical to the issues that Applied raised in the California action. The proper question, however, was whether the issues in the Belgian suit were the same as the issues before the district court in the functional sense articulated above. So framed, it is apparent that Surgical's Belgian claims, like its claim for goodwill indemnities, seek damages that occur "only as a result of termination," concern the applicability of the limitation-on-liability provision, and therefore are disputes "arising out of th[e] Agreement" that are subject to the "exclusive jurisdiction" of "the federal and state courts within the State of California" under the forum selection clause.

[4] The record indicates that Surgical seeks in its Belgian action damages for (1) indemnity in lieu of notice, (2) goodwill indemnity, (3) costs and other indemnities, and (4) repurchase of stock.[1] The district court determined that "[i]t was

---

[1]In Surgical's writ concerning the Belgian action, Surgical refers to these categories alternatively as (1) just and equitable compensation, (2) just and equitable complementary compensation, (3) costs incurred, and (4) repurchase of stock. These categories are referred to in Surgical's November 9, 2007, demand letter to Applied and in its brief as damages for (1) indemnity in lieu of notice, (2) goodwill indemnity, (3) costs and other indemnities, and (4) repurchase of stock. Despite the incongruous nomenclature, our examination of the record leads us to conclude that these categories of damages are synonymous and in any event, that none of them could be asserted except upon a termination of the Agreement. We adopt, for purposes of our discussion, the terms as used in Surgical's letter as they are more descriptive.

only as a result of termination that Applied potentially incurred any goodwill indemnity obligations" and "[t]he Agreement specifically exempts Applied from such obligations through Paragraph 9(f)." Similarly, Surgical's claims for indemnity in lieu of notice, costs and other indemnities, and repurchase of stock occur "only as a result of termination" and are precluded by the language of the contract. Surgical argues that these claims do not depend on termination of the Agreement and instead arise from Applied's failure to comply with the pre-termination notice provisions in the Belgian Act. However, Surgical prefaced its demand for these damages in its November 9, 2007, letter by stating that "[t]he Act provides for the following protection *in the case of unilateral termination* by the manufacturer without cause." (Emphasis added.) Surgical repeats that these claims are available "in the case of unilateral termination" in its brief. Thus, just as the district court reasoned with regard to the goodwill indemnities (a holding that Surgical did not appeal), none of Surgical's other Belgian claims could arise but for the termination of the Agreement. Nothing that Surgical argues establishes otherwise. The district court's disparate treatment of goodwill indemnities and Surgical's other Belgian claims, to this extent, was clearly erroneous.

In support of its argument that its claims under the Belgian Act do not arise out of the Agreement, Surgical relies heavily on the following sentence in Paragraph 9(f): "Termination shall not, however, relieve either Party of obligations incurred prior to termination." Surgical argues that any damages—like goodwill indemnities—that accrue during the Agreement are recoverable without regard to the Agreement's limitation-on-liability provision, even if triggered by termination of the Agreement. The district court already expressly rejected that argument, stating as follows:

> Even though goodwill payments increase over time, they are not actually due until termination occurs. Thus, the actual obligation to pay damages resulting

from loss of goodwill does not arise prior to termination, but instead arises upon termination. If the parties had ultimately decided to continue the relationship, Applied would not have incurred any obligations for goodwill indemnities. It was only as a result of termination that Applied potentially incurred any goodwill indemnity obligations. The Agreement specifically exempts Applied from such obligations through Paragraph 9(f).

As the district court reasoned, the disputed clause in Paragraph 9(f) must be read in conjunction with the rest of the paragraph, which provides unequivocally that "neither Party shall be liable to the other, because of such termination" for a nearly exhaustive list of potential liabilities. Surgical's reading of the last clause of Paragraph 9(f) would essentially eviscerate the entire paragraph as to most termination-related damages.

**[5]** Surgical next argues that the district court's ruling only addressed damages and that "the district court neglected to consider the numerous other *substantive issues*, including jurisdictional issues and liability issues that arise under the 1961 Belgian Distributor Act." This argument is misplaced; the district court already held—and Surgical did not appeal that holding—that California law controls interpretation of the Agreement and that "Belgian law is inapplicable to the interpretation of the Agreement." The district court's logic that "any determination whether goodwill indemnities are proper requires a determination as to the applicability of the contract provision in 9(f)," bringing the dispute within the ambit of the California choice-of-law and forum selection provisions, applies equally to Surgical's other Belgian claims. Thus, despite Surgical's tangential claim that the Belgian Act requires the Belgian court to disregard the Agreement's limitation-on-liability provision, the binding contractual language providing for California law and a California forum controls in the first instance, Belgian law notwithstanding. *See*

*Gallo*, 446 F.3d at 991 (rejecting the argument that an injunction would deprive Andina of rights under Ecuadorian law because "it is not clear that Andina has claims under Ecuadorian law, as the contract contains a choice-of-law clause in favor of California").

Surgical relies on the Eleventh Circuit case, *Canon Latin America, Inc. v. Lantech (CR), S.A.*, which held that a Florida action based on common law contract claims was not dispositive of an earlier action brought in Costa Rica for violation of a Costa Rican law creating liability for unlawful termination of an exclusive distributorship. 508 F.3d 597, 601–02 (11th Cir. 2007). Even if we were to adopt its reasoning, *Canon* is inapposite. In *Canon*, the district court did not grant Canon's summary judgment claim as to a declaration that the Florida choice-of-law provision was valid and enforceable, *id.* at 600 n.7; but here, the enforceability of the choice-of-law provision and applicability of California law to interpretation of the Agreement is law of the case and not appealed. Moreover, *Canon* is not Ninth Circuit precedent and explicitly recognized that the Ninth Circuit does not require foreign claims to be identical in form to the local claims. *Id.* at 601 n.8.

Surgical further argues that the Belgian suit should not be enjoined because "Applied seeks no declaratory relief based on the *specific* unwaivable rights" under the Belgian Act, and thus the issues in the two suits are different. This argument imposes an unjustifiably narrow view of how issues can overlap. In its complaint for declaratory relief, Applied sought a declaration that any disputes arising out of the Agreement must be adjudicated in a California forum under California law and Surgical never urged that California law required application of the Belgian Act. Applied's claim that Surgical should "take nothing due to termination of the Agreement," a determination ultimately adopted by the district court, is dispositive of Surgical's Belgian claims in the sense that those claims arise out of termination of the Agreement and could have been asserted in the district court, whether or not they

have any merit. Applied was not required to invoke the specific language of the Belgian Act in seeking declaratory relief. Instead, it is sufficient that the federal action in the United States District Court for the Central District of California as a whole is the proper action and forum for disposing of the Belgian action. Contrary to Surgical's claims, differences between foreign and domestic law do not necessarily make the "issues" different. Just as the local and foreign issues were functionally the same in *Gallo* even though the foreign action asserted claims under a foreign statute, *see Gallo*, 446 F.3d at 991, the issues are not different here merely because Surgical framed its Belgian action in terms of the Belgian Act. Again, there are many countries in the world with disparate legal systems and declining to enforce the forum selection and choice-of-law provisions here would foster uncertainty detrimental to international business relations.

## C

**[6]** The second step in deciding if an anti-suit injunction is appropriate is determining if the continuation of the foreign litigation would "frustrate a policy of the forum issuing the injunction." *Gallo*, 446 F.3d at 992 (quoting *Seattle Totems Hockey Club v. Nat'l Hockey League*, 652 F.2d 852, 855 (9th Cir. 1981)). The district court, having erroneously concluded that the threshold requirements in *Gallo* were not met, declined to discuss this factor. As we noted in *Gallo* and reaffirm here, there is a strong policy favoring robust forum selection clauses. *Id.* at 992–93. But without the availability of anti-suit injunctions, the vitality of forum selection clauses would be impermissibly and improvidently jeopardized. Although a foreign court might eventually agree that a forum selection clause controls, there is no guarantee that such a resolution would be reached in a timely fashion or at all, and this uncertainty would impair the parties' ability to enforce a forum selection clause. Anti-suit injunctions may be the only viable way to effectuate valid forum selection clauses:

> Forum selection clauses are increasingly used in international business. When included in freely negotiated commercial contracts, they enhance certainty, allow parties to choose the regulation of their contract, and enable transaction costs to be reflected accurately in the transaction price. We have also repeatedly stressed the importance of forum selection clauses and have held that they should be enforced absent strong reasons to set them aside. Without an anti-suit injunction in this case, the forum selection clause effectively becomes a nullity. The potential implications for international commerce are considerable.

*Id.* at 992 (internal quotation and citations omitted).

**[7]** Surgical argues that the Belgian action does not frustrate California policy to enforce forum selection clauses because the Belgian claims arise out of the Belgian Act, not out of the Agreement, and therefore are not subject to the Agreement's forum selection clause. However, as discussed, the district court's unappealed holding that the dispute over goodwill indemnities arises out of the Agreement is equally applicable to Surgical's other Belgian claims. The district court held that a dispute over goodwill indemnities arises out of the Agreement because it "requires a determination as to the applicability of the contract provision in Paragraph 9(f)." Likewise, Surgical's claim of entitlement to the other damages it seeks in its Belgian action requires the same determination whether Paragraph 9(f)'s limitation-on-liability provision applies and likewise arises out of the Agreement. Any continuation of the Belgian action denigrates the integrity of the parties' prior written commitment that disputes concerning the Agreement would be litigated in California. Therefore, California's strong policy favoring enforcement of

forum selection clauses militates in favor of the anti-suit injunction.[2]

**D**

The third step in deciding if an anti-suit injunction is appropriate is determining "whether the impact on comity would be tolerable." *Gallo*, 446 F.3d at 994. The district court summarily concluded that an injunction would undermine the doctrine of comity. We disagree. The district court's conclusion on comity appears to have been based on its prior erroneous conclusion that an anti-suit injunction here would be overly broad. The district court's conclusion that the anti-suit injunction would undermine comity was in error; enjoining Surgical's Belgian action would not have an intolerable impact on comity.

[8] "[T]he extent to which the United States, or any state, honors the judicial decrees of foreign nations is a matter of choice, governed by the comity of nations" and the "[e]xtension of comity to a foreign judgment is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other." *Asvesta v. Petroutsas*, 580 F.3d 1000, 1010–11 (9th Cir. 2009) (internal quotations and citations omitted). Recognizing that anti-suit injunctions may implicate comity concerns, we have urged that they be issued sparingly. *Gallo*, 446 F.3d at 989. However, Surgical and Applied are both private parties that previously agreed to litigate disputes arising out of their contract in California. *Id.*

---

[2]Surgical points out that the forum selection clause in *Gallo* provided for a California forum for "any cause of action arising between the parties, whether under this agreement or otherwise," 446 F.3d at 987, and that this is broader than the Agreement's forum selection clause which provides for a California forum for disputes arising out of the Agreement. However, the difference in the forum selection language does not detract from the interest that California has in the vigorous enforcement of forum selection clauses that require resolving disputes about an agreement in California under California law.

at 994. We concluded in *Gallo* that under its facts enjoining a first-filed foreign suit that contravened a forum selection clause "did not implicate comity at all." *Id.* Here, enjoining Surgical's subsequently-filed foreign suit which contravenes the Agreement's forum selection clause, *a fortiori*, does not implicate comity.

**[9]** Surgical makes much of what it claims is Belgium's interest, expressed through the Act, of "protect[ing] distributors who provide services in the Belgium territory against manufacturers who use their unequal bargaining power to cause distributors to make investments in time, money, and personnel to develop a client base only to cut them off after the distributor provided the ground work." Even assuming that Surgical has accurately depicted Belgium's interest, Surgical's reliance on it is misplaced. The district court, in holding that the forum selection and choice-of-law clauses were valid, enforceable and governed the dispute over goodwill indemnities, explicitly rejected Surgical's argument that the forum selection clause was "unenforceable due to undue influence or overweening bargaining power." Surgical did not appeal this holding, which is now the law of the case, *see United States v. Washington*, 235 F.3d 438, 441 (9th Cir. 2000), but Surgical seeks, by implication, to collaterally attack the underlying findings. The record provides no basis to undermine the district court's conclusion that the Agreement was reached as a result of arms-length bargaining and protracted negotiation. Furthermore, whereas Surgical argues that Belgium has an "important state interest" in not enjoining a "*Belgian* distributor from pursuing enforcement of the . . . rights and protections afforded it by the 1961 Belgian Distributor Act," Surgical admits elsewhere in its brief that it is still in issue "[w]hether the 1961 Belgium Distributor Act applies to a Dutch distributor [such as Surgical] engaged in distribution activities in Belgium." (Emphasis added.) Surgical also conflates the interest Belgium has in protecting its exclusive distributors through judicial application of its substantive law with its interest in providing a forum. Surgical does not con-

tend that Belgium's interest in protecting its exclusive distributors through application of Belgian law cannot be vindicated by other fora applying Belgian law where appropriate. It warrants repeating that federal judges are quite capable of applying foreign law. *Gallo*, 446 F.3d at 991 ("[T]o the degree that [foreign] law does apply, federal courts are capable of applying it.") (citing Fed. R. Civ. P. 44.1; *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1361 (9th Cir. 1988) (en banc)). Therefore, it is not clear what interest Belgium has, if any, in providing a forum to a Dutch company to litigate its dispute with a California company concerning their contract, a contract that was freely entered after exhaustive, arms-length negotiation. Accordingly, it cannot be said that enjoining Surgical's Belgian action would intolerably impact comity (if it would have any impact at all).

Surgical next argues that *Gallo* involved extreme facts distinguishable from this case and so an injunction is less appropriate here. We characterized the foreign action in *Gallo* as "messy, protracted, and potentially fraudulent" in part because the defunct decree Andina relied on was promulgated by a military dictatorship. *Id.* at 995. Surgical argues that its Belgian action, however, is in good faith and is founded on legitimate Belgian law. Surgical's attempt to distinguish *Gallo* on these bases is misplaced. While the extreme facts in *Gallo* tilted the balance "even further in favor of granting an injunction," we made clear in *Gallo* that demonstration of such extreme facts was not necessary to conclude that an injunction would not have an intolerable impact on comity. *Id.* at 993. Instead, we concluded that where there is "no public international issue raised," a foreign government is not involved in the litigation, and the litigation involves private parties concerning disputes arising out of a contract, not only would an anti-suit injunction not have an intolerable impact on comity, but allowing foreign suits to proceed in such circumstances would seriously *harm* international comity. *Id.* at 994.

**[10]** Surgical's subsequent filing of its Belgian action also raises the concern that it is attempting to evade the rightful authority of the district court. *See id.* at 995. Notably, a substantial portion of the monetary damages Surgical seeks in its Belgian action is comprised of Surgical's claim for goodwill indemnities, which the district court already held Surgical was not entitled to (along with any other damages due to termination). Surgical opted to proceed with its claim for goodwill indemnities and other damages in its Belgian action in spite of the fact that its entitlement to goodwill indemnities was already being litigated in the district court. We reject Surgical's argument that enjoining the subsequent Belgian action would intolerably impact comity. Surgical does not so much as acknowledge that allowing it to proceed in its Belgian action would effectively abrogate the United States District Court's judgment that Surgical is not entitled to goodwill indemnities and shall take nothing due to termination. At most, there are competing comity concerns, so it cannot fairly be said that granting the anti-suit injunction, thereby preserving the authority of the district court and the force of its final judgment, would have an intolerable impact on comity.

## IV

**[11]** We conclude that the district court erred as a matter of law in its application of the *Gallo* test, which requires, as the first step, a functional analysis concerning whether issues are the same in the sense that the issues in the action to be enjoined come within the terms of the forum selection clause and the local action is capable of disposing of them. The district court's treatment of Surgical's Belgian claims, other than goodwill indemnities, as being available apart from termination was clearly erroneous. The district court's denial of the anti-suit injunction was an abuse of discretion. We **REVERSE** and **REMAND** to the district court for it to order an anti-suit injunction.[3]

---

[3]The panel expresses no opinion whether Surgical can, at this late stage in the proceedings after a final judgment, subsequently seek to assert Belgian Act claims in the district court, on the theory that California law might embrace and apply Belgian law in part.