# United States Court of Appeals for the Federal Circuit

---

**SANOFI-AVENTIS DEUTSCHLAND GMBH,**
*Plaintiff-Appellee,*

**v.**

**GENENTECH, INC.,**
*Defendant-Appellant,*

AND

**BIOGEN IDEC INC.,**
*Defendant.*

---

2012-1454

---

Appeal from the United States District Court for the Northern District of California in Nos. 08-CV-4909 and 09-CV-4919, Judge Susan Y. Illston.

---

Decided: May 10, 2013

---

WILLIAM E. SOLANDER, Fitzpatrick, Cella, Harper & Scinto, of New York, New York, argued for plaintiff-appellee. With him on the brief were DOMINICK A. CONDE, NINA SHREVE, JOSHUA A. DAVIS and LINDSAY HERSH.

CHARLES K. VERHOEVEN, Quinn Emanuel Urquhart & Sullivan, LLP, of San Francisco, California, argued for defendant-appellant. With him on the brief were VICTORIA F. MAROULIS and ERIC W. WALL.

---

Before RADER, *Chief Judge,* DYK and REYNA, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* REYNA.

Concurring opinion filed by *Circuit Judge* DYK.

REYNA, *Circuit Judge.*

This case requires us to determine whether, based on a final judgment in the United States that a patent is not infringed, a party is entitled to an injunction preventing the patent owner from proceeding in a previously-filed foreign arbitration of a license to that patent. We conclude that under Ninth Circuit law and the facts of this case, the injunction is not warranted. We therefore affirm the district court's denial of the injunction.

## BACKGROUND

Sanofi-Aventis Deutschland GmbH ("Sanofi") sued Genentech, Inc. ("Genentech") and Biogen Idec Inc.[1] ("Biogen") for infringement of U.S. Patent Nos. 5,849,522 and 6,218,140 (the patents-in-suit) based on sales of the allegedly infringing drugs Rituxan and Avastin. The district court found that there was no infringement, *Sanofi–Aventis Deutschland GmbH v. Genentech, Inc.*, Nos. C 08–4909 SI, C 09–4919 SI, 2011 WL 839411 (N.D. Cal. Mar. 7, 2011), and this court affirmed. *Sanofi-*

---

[1] Biogen was a party in the infringement lawsuit but is not involved in the arbitration. It did not participate in the request to enjoin the arbitration and is not a party to this appeal.

*Aventis Deutschland GmbH v. Genentech, Inc.*, 473 F. App'x 885 (Fed. Cir. 2012).

Although the U.S. lawsuits were filed in 2008, the origin of this dispute is much older. On August 23, 1985, Sanofi's predecessor, Behringwerke AG ("Behringwerke"), filed a U.S. patent application directed to the use of certain DNA sequences, known as enhancers, that had been identified in human cytomegalovirus. An enhancer is a sequence of DNA that, when introduced into a cell that produces a drug, can enable the cell to produce the drug at a much higher rate than would ordinarily be possible.

In 1992, Genentech entered into an agreement (the "Agreement") with Behringwerke licensing intellectual property related to enhancers, including the applications that ultimately matured into the patents-in-suit. The Agreement specified that in exchange for fixed annual payments, Genentech could practice the patents-in-suit for research purposes. Genentech made these payments from 1992 to 2008. In addition, the Agreement required Genentech to pay a running royalty of 0.5% on the sale of commercially marketable goods incorporating a "Licensed Product." The Agreement defined licensed products as "materials (including organisms), the manufacture, use or sale of which would, in the absence of this Agreement, infringe one or more unexpired issued claims of the Licensed Patent Rights." The Agreement was governed by German law and required disputes to be settled by arbitration in accordance with the rules of the International Chamber of Commerce ("ICC").

In 1996, Behringwerke AG became Hoechst AG ("Hoechst"). Hoechst transferred its pharmaceutical business to a company which, after a series of name changes, eventually became Sanofi. Both the Agreement and the rights in the patents-in-suit remained with

Hoechst. Hoechst is a holding company that owns 85% of Sanofi; both are German entities.

In the present case, Sanofi alleges that Biogen and Genentech infringed the patents-in-suit by using the patented enhancers in the manufacture and sale of two drugs: Rituxan and Avastin. Genentech launched Rituxan in December 1997 and Avastin in February 2004. Genentech did not identify Rituxan or Avastin as licensed products, nor did it pay the 0.5% royalty on them. In letters dated June 30, 2008, and July 15, 2008, Sanofi accused these products of infringing the asserted patents. Shortly thereafter, on August 27, 2008, Genentech notified Sanofi of its intent to terminate the Agreement. On October 10, 2008, Hoechst transferred the patents to Sanofi.[2] On October 24, 2008, pursuant to the Agreement, Hoechst demanded arbitration before a European arbitrator of the ICC. Termination of the Agreement became effective on October 27, 2008.

Three days after Hoechst initiated the foreign arbitration, Genentech terminated the Agreement and filed a complaint for declaratory judgment of invalidity and non-infringement in the United States District Court for the Northern District of California. On the same day, Sanofi filed an infringement complaint in the United States District Court for the Eastern District of Texas. The two actions were consolidated in the Northern District of California and, after a *Markman* hearing, the court granted summary judgment of non-infringement. Sanofi

---

[2]     During the course of these proceedings, the rights to the patents-in-suit and the Agreement have passed between Hoechst and Sanofi several times. Because the details of these transactions are not material to our discussion, we do not describe them in detail here.

appealed,[3] and this court affirmed. *Sanofi-Aventis Deutschland*, 473 F. App'x at 886.

While the litigation proceeded in the United States, the ICC arbitration continued abroad. After the *Markman* hearing but before the judgment of non-infringement, Sanofi argued to the arbitrator that the district court's claim construction was wrong. After this court affirmed, Genentech argued to the arbitrator that our judgment disposed of all issues in the arbitration; Hoechst and Sanofi urged the arbitrator to proceed to determine an appropriate amount of royalties. In the Second Partial Award, the arbitrator appeared inclined to agree with Hoechst, stating that Rituxan "is produced with the help of the [patents-in-suit]." The arbitrator did not, however, decide the issue of liability at that time.

On remand, Genentech moved the district court to enjoin Sanofi from continuing with the foreign arbitration. At the motion hearing, the district court stated its belief that the non-infringement ruling would be dispositive if applied in the foreign arbitration. Nevertheless, the court denied the motion, finding that (1) "Genentech has not shown that the parties are the same, as Hoechst is a party to the European arbitration, but is not a party to this litigation," (2) that "an injunction would frustrate the policies of [the United States] in favor of enforcement of forum selection clauses in arbitration agreements," and (3) that the injunction would not be in the interest of international comity. The court observed that as a matter of U.S. law, Rituxan did not infringe the patents-in-suit,

---

[3] The district court certified its non-infringement ruling as final pursuant to Fed. R. Civ. P. 54(b) and stayed the remainder of the case, including the issue of invalidity. *Sanofi–Aventis Deutschland GmbH v. Genentech, Inc.*, Nos. C 08–4909 SI, C 09–4919 SI, 2011 WL 839411 (N.D. Cal. Apr. 21, 2011), ECF Nos. 621, 622.

but concluded that "[t]o the extent that the arbitration involves the same infringement questions, under U.S. law, Genentech can present its arguments to the arbitrator regarding why the judgment of this court should be respected."

On September 5, 2012, the arbitrator issued his Third Partial Award. *See* Motion to Take Judicial Notice of Arbitral Award and Motion to Dismiss on the Papers or for Lack of Subject Matter Jurisdiction, *Sanofi-Aventis Deutschland GmbH v. Genentech, Inc.*, No. 2012-1454 (Fed. Cir. Sept. 18, 2012), ECF No. 50, at Ex. A. ("*Third Partial Award*"). The arbitrator determined that German substantive law, not United States patent law, would be used to determine whether Rituxan was a licensed article under the Agreement. *See Third Partial Award* ¶¶ 246-50, 253, 293. Applying that law, the arbitrator determined that a drug could be a licensed article even though it did not contain the patented enhancers, so long as those enhancers were used in its manufacture. *Id.* ¶ 283. Because it concluded that the enhancers were used in making Rituxan, the arbitrator determined that Genentech was liable for damages under the Agreement. *Id.* ¶ 331. Arbitration proceedings to determine a damages amount are ongoing at this time.

Genentech appeals the denial of its request for an anti-suit injunction. As in the first appeal, we have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

### I

Genentech asserts that we should apply Federal Circuit law because the order under review in this case is a district court's decision granting, denying, or modifying an injunction in a patent case. *See Int'l Rectifier Corp. v. Samsung Elecs. Co.*, 361 F.3d 1355, 1359 (Fed. Cir. 2004). Genentech observes that although our decision in *Katz v.*

*Lear Siegler, Inc.*, 909 F.2d 1459, 1462 (Fed. Cir. 1990) is contrary to its position, the distinction is not relevant here as both the Ninth Circuit and the Federal Circuit employ the same legal standard.

Sanofi contends that the law of the Ninth Circuit applies and that we should review the denial of an anti-arbitration injunction for abuse of discretion. *Applied Med. Distrib. Corp. v. Surgical Co.*, 587 F.3d 909, 931 (9th Cir. 2009).

We agree with Sanofi. "For issues not unique to patent law, we apply the law of the regional circuit in which this appeal would otherwise lie." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 841 (Fed. Cir. 2010), *aff'd*, —— U.S. ——, 131 S. Ct. 2238 (2011). The issue before us is whether an anti-suit injunction should issue, which is not unique to patent law. *See, e.g., E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984 (9th Cir. 2006) (instructing the district court to grant an anti-suit injunction in a case dealing with wine distribution); *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 649 (2d Cir. 2004) (affirming the district court's order compelling arbitration and enjoining a foreign litigation over a sales and service agreement and a distribution agreement for medical equipment); *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 359-60 (5th Cir. 2003) (vacating an order enjoining a party from pursuing a foreign suit to enforce a foreign arbitration award regarding a construction contract). We therefore apply the law of the Ninth Circuit.

The Ninth Circuit reviews the grant or denial of an anti-suit injunction for abuse of discretion. *Applied Med.*, 587 F.3d at 931. Under Ninth Circuit law, the denial of an anti-suit injunction will be reversed "where the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings

of fact." *Gallo*, 446 F.3d at 989 (quoting *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 964 (9th Cir. 2002)) (internal quotation marks omitted).

## II

It is well-settled that U.S. courts have the power to enjoin parties from pursuing litigation before foreign tribunals. *See, e.g.*, *Gallo*, 446 F.3d at 989; *accord Stein Assocs., Inc. v. Heat & Control, Inc.*, 748 F.2d 653, 658 (Fed. Cir. 1984). "[I]n evaluating a request for an anti-suit injunction, [the district court] must determine (1) 'whether or not the parties and the issues are the same, and whether or not the first action is dispositive of the action to be enjoined'; (2) whether the foreign litigation would 'frustrate a policy of the forum issuing the injunction'; and (3) 'whether the impact on comity would be tolerable.'" *Applied Med.*, 587 F.3d at 913 (quoting *Gallo*, 446 F.3d at 991, 994). Genentech argues that each of the three factors is present in this case.

As to the first factor, Genentech argues that the issue in both proceedings is infringement and that the parties are identical. For the second factor, Genentech argues, *inter alia*, that the policy in favor of arbitration does not apply here, and that res judicata requires us to ensure that the foreign arbitrator respects the judgments of U.S. courts. Finally, Genentech contends that enjoining the foreign arbitration would benefit—not impair—international comity. We address each factor in turn.

## A

"The first step . . . in deciding if an anti-suit injunction is appropriate is determining 'whether or not the parties and the issues are the same, and whether or not the first action is dispositive of the action to be enjoined.'" *Applied Med.*, 587 F.3d at 915 (quoting *Gallo*, 446 F.3d at 991). The issues need not be identical; it is enough that they are functionally the same such that the result in one

action is dispositive of the other. *Id.* If they are not identical or functionally the same, no injunction will lie.

Genentech argues that the issues are functionally the same because the royalty obligation that is the subject of the foreign arbitration depends upon the same alleged patent infringement that the Federal Circuit held did not occur; thus, there is nothing left for the foreign arbitrator to resolve.

Sanofi offers several bases for its counter-argument that the issues are not the same: (1) that the U.S. litigation involves infringement, while the foreign arbitration is a breach of contract dispute; (2) that the U.S. litigation involves only the time after the license was terminated, whereas the foreign arbitration involves the time up until the termination; and (3) that the U.S. dispute involves the application of U.S. patent law, while the foreign arbitration involves the application of German contract law, French procedural law, and the rules of the ICC.

The Ninth Circuit recently addressed anti-suit injunctions in *Applied Medical.* There, a Californian supplier entered into a distribution agreement with a Belgian distributor. The agreement was governed by California law, and the parties agreed that California courts would have exclusive jurisdiction over "any dispute arising out of [the] agreement." *Id.* at 911. When the supplier notified the distributor of its intent not to renew the agreement, the distributor requested compensation it claimed was due under a Belgian law. *Id.* at 912. The supplier declined this request and brought suit in California to "enjoin [the distributor] from pursuing relief in Belgium or any other non-California forum under non-California law." *Id.* Subsequently, the distributor filed suit in Belgium. *Id.*

Although *Applied Medical* dealt with an agreement under U.S. law and a forum selection clause specifying a U.S. state, its reasoning is nevertheless instructive. The

Ninth Circuit held that the district court had erred by "requiring that the claims in the domestic and foreign action be 'identical' instead of engaging in the more functional inquiry concerning dispositiveness required by *Gallo*." 587 F.3d at 914. The functional inquiry required the district court to "determine whether the issues are the same in the sense that all the issues in the foreign action fall under the forum selection clause and can be resolved in the [U.S.] action." *Id.* at 915. Although the Belgian-law claims were not identical to the U.S. claims, which were phrased as concerning the limitation on liability provision of the agreement, the Ninth Circuit determined that they were functionally the same because they arose out of the agreement and were subject to the forum selection clause.

The instant case presents a mirror image of *Applied Medical*: the Agreement is governed by German law, the forum selection clause specifies arbitration at the ICC, and the initial suit was brought pursuant to the Agreement in Europe. Had Genentech not terminated the Agreement, it would be easy to apply *Applied Medical* to the facts of this case. Whether Genentech had infringed, and therefore owed royalties under the Agreement, would be a claim arising out of the Agreement and subject to the Agreement's forum selection clause.[4]

By electing to terminate the license, however, Genentech created a situation where, at least for the period after it had terminated the license, neither the Agreement nor the forum selection clause applied, and Genentech was free to litigate infringement in the United States. It has done so, obtaining a judgment of non-infringement.

---

[4]    Of course, the license would also be a defense to infringement. But this simply reinforces the point that when the license was in effect, the proper forum was the ICC.

To the extent that that judgment concerns Genentech's actions after the Agreement was terminated, it does not arise out of the Agreement. The question, then, is whether that judgment is dispositive of the foreign arbitration for the period during which the Agreement was in effect. The answer to this question turns on whether the issues are functionally identical, as described in *Applied Medical*.

We agree with Sanofi that the U.S. judgment of non-infringement is not dispositive as to breach of the Agreement. As in *Applied Medical*, the dispute arises out of the Agreement and is subject to the Agreement's forum selection clause. The issue in the foreign arbitration is breach of the Agreement, not patent infringement. Applying German law, the arbitrator has already deviated from U.S. patent law by concluding that infringement is possible even if the patents are invalid. In addition, the arbitrator has adopted a definition of infringement that includes using the enhancer to produce Rituxan, even if the enhancer is not in the ultimate product. The arbitrator thus appears to have adopted a definition of infringement that is both over- and under-inclusive compared to U.S. law.[5] The district court came to the same conclusion, stating that "[t]o the extent that the arbitration involves the same infringement questions, under U.S. law, Genentech can present its arguments to the arbitrator regarding why the judgment of this court should be respected." In our view, this statement correctly recognizes that the meaning of infringement under the Agreement and the meaning of infringement under U.S. law are not functionally the same.

---

[5] We also note that Sanofi has not asked the U.S. courts to decide the meaning of infringement under German law. *See Gallo*, 446 F.3d at 991 ("[T]o the degree that [foreign] law does apply, federal courts are capable of applying it . . . .").

Turning to the identity of the parties, Genentech cites several district court decisions and one Second Circuit case for the proposition that, under the facts of this case, we should treat Hoechst and Sanofi as identical parties. Given that we hold that the issues in this case are not the same, it is unnecessary to address this argument. We therefore express no opinion as to the district court's reliance on the presence in the foreign arbitration of Hoechst (who was not a party to the U.S. litigation) to support the denial of the injunction.

B

The district court's denial of the anti-suit injunction is further grounded in the second *Gallo* factor: whether the foreign litigation would frustrate a policy of the forum issuing the injunction.[6] Genentech argues that res judicata requires us to ensure that the arbitrator respects the judgment of the U.S. courts, and that the U.S. policy in favor of arbitration does not apply here. Sanofi responds primarily that the strong interest in enforcing forum selection clauses requires the injunction to be denied.

Genentech's res judicata argument is without merit. Genentech suggests that the judgment of non-infringement has res judicata effects on the foreign arbitration. But Genentech is not arguing that the district court in this case is bound by res judicata—it is in essence

---

[6]    The fact that we discuss the second and third *Gallo* factors should not be read to imply that an anti-suit injunction would necessarily be precluded based on those factors alone in a case where the issues are the same. As the concurrence correctly observes, this is not such a case. We express no opinion as to the correct result under Ninth Circuit law should those circumstances arise in some future case.

asking us to find that res judicata should apply in another case, the foreign arbitration. First, Genentech cites no authority to suggest that res judicata can be applied in this manner. Second, Genentech asks us to apply res judicata in a manner that essentially replaces the Ninth Circuit's three-factor test in *Gallo*, effectively nullifying it. Third, we are persuaded by *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 880 (9th Cir. 2007), which Genentech itself has cited to us, that although arbitrators may not ignore res judicata, they "generally are entitled to determine in the first instance whether to give the prior judicial determination preclusive effect." This is especially appropriate here, where there is no reason to believe that res judicata operates identically under German law. Furthermore, given that we have acknowledged that the issues are not the same, and the named parties in the foreign arbitration are different from those in the U.S. litigation, the res judicata argument is not persuasive.

Turning to whether the injunction would frustrate the policies of the forum, it is undeniable that the United States has a strong policy in favor of forum selection clauses. *See, e.g.*, *Gallo*, 446 F.3d at 992. In both *Gallo* and *Applied Medical*, the Ninth Circuit vindicated this policy by enforcing U.S. forum-selection clauses by means of an anti-suit injunction. Although the forum selection clause in this case weighs against jurisdiction in the United States, the same reasoning applies: enjoining suit would undermine the parties' choice of forum.

The parties in this case entered into an agreement in 1991 that remained in force until Genentech terminated it in 2008. They agreed that disputes under that agreement would be governed by German law and heard by the ICC. Hoechst remained faithful to that agreement, initially seeking relief in the ICC after Genentech asserted that Rituxan and Avastin were not licensed articles. Only after Genentech terminated the license did the parties seek relief in a different forum—the United States. To

the extent that the parties sought relief for the period after the license was terminated, there was no frustration of the policy in favor of enforcing forum selection clauses. By seeking to impose the U.S. judgment of non-infringement on the foreign arbitration, however, Genentech effectively asked this court to relieve it of its obligation to settle such disputes at the ICC. We conclude that Genentech's request would frustrate the interest in enforcing forum selection clauses, and therefore reject Genentech's argument.

## C

The third and final factor when reviewing an anti-suit injunction is "whether the impact on comity would be tolerable." *Gallo*, 446 F.3d at 994. Here, because forum selection is involved, this factor overlaps with the second factor. As the Ninth Circuit explained in *Applied Medical*:

> [G]lobalization has enhanced the significance of international trade, and those in business who would trade across national lines confront many varying legal systems in different countries. If we do not give primacy to parties' choice of forum and choice of law, there will be insufficient certainty to foster international trade relations. Conversely, so long as the parties have no gross disparity in bargaining power, it is difficult to see how holding them to their agreed forum and law is not beneficent.

587 F.3d at 916. As we have explained more fully above, the parties in this case agreed to the ICC as a forum for disputes over the license. "In a situation like this one, where private parties have previously agreed to litigate their disputes in a certain forum, one party's filing first in a different forum would not implicate comity at all." *Gallo*, 446 F.3d at 994.

CONCLUSION

The district court's denial of Genentech's request for an anti-suit injunction was not an abuse of discretion. None of the three *Gallo* factors supports the imposition of the injunction Genentech requests. Accordingly, the decision of the district court is

**AFFIRMED.**

# United States Court of Appeals
# for the Federal Circuit

_____

**SANOFI-AVENTIS DEUTSCHLAND GMBH,**
*Plaintiff-Appellee,*

**v.**

**GENENTECH, INC.,**
*Defendant-Appellant,*

AND

**BIOGEN IDEC INC.,**
*Defendant.*

_____

2012-1454

_____

Appeal from the United States District Court for the Northern District of California in Nos. 08-CV-4909 and 09-CV-4919, Judge Susan Y. Illston.

_____

DYK, *Circuit Judge*, concurring.

I agree with the majority that the district court did not abuse its discretion in denying the anti-suit injunction sought by Genentech. The majority correctly concludes that the issues litigated in the foreign International Chamber of Commerce arbitration and the United States patent infringement proceeding were not identical. Specifically, it concludes that "the U.S. judgment of non-

infringement is not dispositive as to breach of the agreement," Maj. Op. at 11, and that "the meaning of infringement under the Agreement [arising from German contract law] and the meaning of infringement under U.S. law are not functionally the same." Maj. Op. at 11. Because identity of issues is a "threshold consideration" that must necessarily be met before an anti-suit injunction may issue, *see Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 882 (9th Cir. 2012), the lack of identical issues in the two proceedings is alone sufficient to demonstrate that the district court did not abuse its discretion.

The majority opinion, however, goes on to address the two remaining factors that are sometimes given some weight in determining whether an anti-suit injunction should issue. These issues, as the majority notes, are "whether the foreign litigation would 'frustrate a policy of the forum issuing the injunction'; and . . . 'whether the [injunction's] impact on comity would be tolerable.'" *Applied Med. Distrib. Corp. v. Surgical Co. BV*, 587 F.3d 909, 913 (9th Cir. 2009) (quoting *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 991, 994 (9th Cir. 2006)). Here, the majority emphasizes that both the United States' "strong policy in favor of the enforcement of forum selection clauses," *Gallo*, 446 F.3d at 992, and international comity further support the district court's ruling.

However, despite this language, I do not read the majority as holding that comity and public policies favoring forum selection clauses necessarily foreclose anti-suit injunctions where the issues are the same.

Specifically, there may be instances where, in contrast to this case, the issues raised and resolved in the U.S. patent infringement action were identical to those raised in the international forum. In such instances, the patent holder should not be allowed to make an end run around the U.S. determination by later invoking an international

proceeding, and an anti-suit injunction against the foreign proceeding may be appropriate.

In cases cited by the Ninth Circuit in *Gallo*, 446 F.3d at 995, other circuits have noted that foreign tribunals are not entitled to deference under comity principles where a foreign proceeding is a "blatant attempt to evade the rightful authority of the forum court," *Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 20 (1st Cir. 2004), or where the foreign suit "is specifically intended to interfere with and terminate" a suit in the U.S. courts, *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 938 (D.C. Cir. 1984). This is especially the case where the foreign proceeding "could amount to an unjustified evasion of United States law injuring significant domestic interests." *Id.* There is a strong U.S. "policy of promoting uniform interpretation and enforcement of United States patent law." *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1356 (Fed. Cir. 2002). Where a patentee chooses to litigate in a U.S. forum and loses, it would be unreasonable to give the patentee a second bite at the apple that would undo the U.S. judgment. This is not the situation here because of the different issues involved in the two proceedings, but an anti-suit injunction may be appropriate in future cases.