[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 21, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-13571

_____

D. C. Docket No. 05-20297-CV-MGC

CANON LATIN AMERICA, INC.,

                                                        Plaintiff-Appellee,

versus

LANTECH (CR), S.A.,

                                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(November 21, 2007)**

Before EDMONDSON, Chief Judge, DUBINA, Circuit Judge, and MARTIN,*
District Judge.

_____

        *Honorable Beverly B. Martin, United States District Judge for the Northern District of
Georgia, sitting by designation.

PER CURIAM:

This case raises a question about the district court's authority to enjoin the parties before it from proceeding with litigation in a foreign court. Defendant-Appellant Lantech (C.R.), S.A. ("Lantech") appeals the district court's decision to grant a permanent injunction barring Lantech from proceeding with its claims in Costa Rica against Plaintiff-Appellee Canon Latin America, Inc. ("Canonlat"). For the reasons that follow, we vacate the injunction and remand the case for dismissal of Canonlat's outstanding claims.

## I. Background

In 1996, Canonlat, a Florida corporation headquartered in Miami, entered into an agreement with Lantech, a Costa Rican corporation, to distribute Canon brand products in Costa Rica. In 2003, the parties entered into a superseding distribution agreement ("the Agreement"). Under the Agreement, Canonlat appointed Lantech "as a non-exclusive authorized distributor of the CANON® brand products" for the territory of Costa Rica. The Agreement also included a forum selection and choice of law clause in favor of Florida.[1] The parties

_____

[1] The Agreement states in relevant part:

negotiated the original and superseding agreements at arm's length and entered into both agreements voluntarily.

In March 2004, Canonlat notified Lantech that it was seeking to appoint an additional distributor. The following month, over Lantech's objections, Canonlat appointed Santa Barbara Technology, S.A. ("SB Technology") as an additional distributor beginning in July 2004. At the time of SB Technology's appointment, Lantech had fallen behind on its payments and owed Canonlat $247,653.20.

In November 2004, without informing Canonlat, Lantech filed suit in Costa Rica against Canonlat and SB Technology for violating Costa Rica Public Law 6209 ("Law 6209"), entitled "Representatives of Foreign Companies Act." Lantech sought indemnity in excess of $6 million on grounds that Canonlat unlawfully terminated Lantech as an "exclusive" distributor.[2] In December 2004,

---

THIS AGREEMENT IS MADE WITHIN THE STATE OF FLORIDA AND SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF FLORIDA. . . . IN THE EVENT OF ANY LITIGATION BETWEEN THE PARTIES, DISTRIBUTOR CONSENTS TO THE JURISDICTION AND VENUE OF THE STATE AND FEDERAL COURTS SITUATED WITHIN THE STATE OF FLORIDA UPON SERVICE OF PROCESS MADE IN ACCORDANCE WITH THE STATUTES OF FLORIDA AND THE UNITED STATES, RESPECTIVELY. DISTRIBUTOR FURTHER AGREES THAT ALL SUITS COMMENCED BY DISTRIBUTOR AGAINST CANONLAT UPON ANY AND ALL CAUSES OF ACTION, WHETHER OR NOT SUCH CAUSES OF ACTION HAVE ARISEN UNDER THIS AGREEMENT AND REGARDLESS OF THE LEGAL THEORY UPON WHICH SUCH CAUSES OF ACTION ARE BASED, SHALL BE BROUGHT EXCLUSIVELY IN A STATE OR FEDERAL COURT SITUATED WITHIN THE STATE OF FLORIDA.

[2] The relevant provisions of Law 6209 state:

3

without prior notice to Canonlat, a Costa Rican court required Canonlat to post a

$1 million bond or discontinue importing goods to Costa Rica. After SB

Technology informed Canonlat of the lawsuit in January 2005, Canonlat posted the

bond and sought unsuccessfully to dismiss the Costa Rican action for lack of

jurisdiction.[3] Later, in March 2005, Canonlat formally notified Lantech by letter

that the Agreement was terminated for non-payment of goods.

After learning of the Costa Rican action, Canonlat filed this suit in February

2005 against Lantech in the Southern District of Florida for declaratory and

injunctive relief, seeking to bar Lantech from proceeding with its suit in Costa

---

Article 2: If the representation, distribution or manufacturing contract is terminated due to causes not related to the will of the representative, the distributor or the manufacturer . . . the foreign company must indemnify them . . . .

       *     *     *

Article 4: The following are deemed as just causes for the termination of the contract of representation, distribution or manufacture, with liability for the foreign company: . . . e – The appointment of a new representative, distributor or manufacturer, when the affected parties have exercised the representation, distribution or manufacture on an exclusive basis.

Here, we use the translation provided to us in the appendix to Lantech's brief.

[3] In May 2005, the Costa Rican court rejected Canonlat's jurisdictional challenge on grounds that the Agreement's forum selection clause "is of no effect, since a public policy law such as 6209 specifies that the jurisdiction of the courts of this country cannot be waived in this type of dispute." A three-judge appellate panel affirmed in August 2005. The relevant anti-waiver provision of Law 6209 is Article 7, which states: "The jurisdiction of the Costa Rican courts of justice and the rights of the representative, distributor or manufacturer, by virtue of this law, cannot be waived."

Rica.[4]  The district court granted the requested permanent anti-suit injunction.[5]  In reaching its decision, the district court rejected Lantech's argument that the parties in the two actions were not identical[6] and that the action in the enjoining court was not similar to or dispositive of the action in the foreign court.  The district court concluded instead that the parties and claims were sufficiently similar to meet the threshold requirements for issuing an anti-suit injunction.[7]  Lantech now appeals the district court's order.

---

[4] Count I of Canonlat's amended complaint filed in May 2005 sought a declaratory judgment that the forum selection and choice of law provisions, as well as the non-exclusivity provisions, of the Agreement were valid and enforceable.  Under Count II, Canonlat sought an injunction barring Lantech from maintaining its lawsuit in Costa Rica.  Counts III through VI involved breach of contract as well as quasi-contract claims against Lantech for failure to pay its outstanding debt.  Lantech agreed in March 2007 to a final judgment on Count III for breach of contract, and the parties stipulated to the dismissal of Counts IV, V, and VI.  Thus, the only outstanding claims on appeal are Counts I and II.

[5] In September 2006, the district court issued a preliminary injunction effective until it determined whether the forum selection and choice of law clause was valid and enforceable.  As a result of the preliminary injunction, Lantech moved to temporarily suspend the Costa Rican proceedings and then filed an interlocutory appeal in this court, which has since been dismissed as moot.  The Costa Rican court agreed to an initial six-month stay, and then, in April 2007, it issued a final six-month stay that Lantech says will expire on 29 November 2007.  In July 2007, the district court granted the permanent injunction that is the subject of this appeal, adopting its earlier ruling on the preliminary injunction.

[6] The Costa Rican action includes the additional distributor, SB Technology, but the United States action does not.

[7] On Canonlat's Count I claims for declaratory judgment, the district court granted partial summary judgment to Canonlat, declaring that the Florida forum selection clause was valid and enforceable, notwithstanding Lantech's argument that the express anti-waiver provision in Law 6209 represents Costa Rica's strong public policy in litigating claims under Law 6209 only in Costa Rican courts.  But the district court did not grant summary judgment to Canonlat on its remaining declaratory judgment claims involving the validity and enforceability of the choice of law provisions as well as the validity and enforceability of the non-exclusivity provisions.

## II.  Standard of Review

A district court's decision to grant a permanent anti-suit injunction is reviewed for abuse of discretion.  Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 651 (2d Cir. 2004); see SunAmerica Corp. v. Sun Life Assurance Co. of Canada, 77 F.3d 1325, 1333 (11th Cir. 1996) ("We review the district court's grant of injunctive relief for abuse of discretion . . . .").  But even under this standard, we review de novo a district court's interpretation of "[u]nderlying questions of law."  Major League Baseball v. Crist, 331 F.3d 1177, 1183 (11th Cir. 2003).

## III.  Discussion

It is well-established among the courts of appeals that federal courts have some power to enjoin foreign suits by persons subject to federal court jurisdiction.  See, e.g., Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren, 361 F.3d 11, 16 (1st Cir. 2004); China Trade & Dev. Corp. v. M.V. Choong Yong, 837 F.2d 33, 35 (2d Cir. 1987).  Lantech challenges the injunction at issue here, however, on grounds that the threshold requirements for issuing an anti-suit injunction are not

satisfied. Because we agree with Lantech that this case does not meet at least one of the threshold requirements, we vacate the injunction.

As an initial matter, a district court may issue an anti-suit injunction only if: (1) "the parties are the same in both [the foreign and domestic lawsuits]," and (2) "resolution of the case before the enjoining court is dispositive of the action to be enjoined."[8] Paramedics, 369 F.3d at 652; see also E. & J. Gallo Winery v. Andina Licores S.A., 446 F.3d 984, 991 (9th Cir. 2006). Once these threshold requirements are satisfied, courts must then consider additional factors to determine whether an injunction is appropriate. Paramedics, 369 F.3d at 652; see also Quaak, 361 F.3d at 18 (noting that only if the "gatekeeping inquiry" is met "should the court proceed to consider all the facts and circumstances in order to decide whether an injunction is proper"); George A. Bermann, The Use of Anti-Suit Injunctions in International Litigation, 28 Colum. J. Transnat'l L. 589, 626 (1990) (observing that "courts will not consider issuing anti-suit injunctions unless in fact there are (or could be) parallel local and foreign actions between the same parties over the same claim").

---

[8] Not all circuits adhere strictly to the requirement that the action in the enjoining court be dispositive of the action to be enjoined or that the claims in both actions be the same. See, e.g., Gallo, 446 F.3d at 991 (treating a claim under an Ecuadorian decree the same as a claim for breach of contract); Quaak, 361 F.3d at 20 (concluding that the threshold inquiry is satisfied because the parties and the claims are "substantially similar"). In the interest of international comity and judicial restraint, however, we choose to read "dispositive" for what it means: to settle or finish the dispute.

Lantech contends that the claims in the district court are not dispositive of the claim in the Costa Rican court because the actions involve different substantive issues. For instance, the only substantive issue in the Costa Rican action is a claim arising from Law 6209 for unlawful termination of an exclusive distributorship. No claim under Law 6209 is before the district court. Instead, the only substantive issues before the district court are common law contract and quasi-contract claims for non-payment of goods.

Canonlat argues that the two actions share similar claims because they both seek a declaration about whether the Agreement's forum selection and choice of law clause is valid and enforceable, a declaration about whether Lantech was an exclusive distributor, and a declaration about monetary damages, including whether Lantech owed Canonlat an outstanding debt for goods sold and delivered. Canonlat also agrees with the district court that the two actions are sufficiently similar because Lantech's Costa Rican complaint "'is replete with references to the Agreement,'" which puts the effect and enforceability of the Agreement at issue in both the district court and Costa Rican actions.

Lantech's Costa Rican action hinges on statutory rights that are unique to Costa Rica and that cannot be resolved by a judgment of the district court on

8

Canonlat's claims in Florida.[9]  As a result, the district court erred in granting the permanent anti-suit injunction against Lantech.  See, e.g., Goss Int'l Corp. v. Man Roland Druckmaschinen Aktiengesellschaft, 491 F.3d 355, 366 (8th Cir. 2007) (declining to intervene in foreign litigation where the plaintiff "seeks to litigate in Japan a cause of action solely available in Japan and not previously litigated in the [recently concluded U.S. action]"); Canadian Filters (Harwich) Ltd. v. Lear-Siegler, Inc., 412 F.2d 577, 579 (1st Cir. 1969) (vacating an international anti-suit injunction "where the subject matter of the foreign suit is a separate, independent foreign patent right"); Sperry Rand Corp. v. Sunbeam Corp., 285 F.2d 542, 545 (7th Cir. 1960) (vacating the injunction because "disposition of the cause pending in the District Court [would not] dispose of the German case or other threatened cases in foreign courts," which "involv[ed] specific foreign rights arising under and enforceable only through the laws of those foreign countries").

## IV.  Conclusion

---

[9] That Lantech could have brought its Law 6209 claim in the district court by way of counterclaim is unimportant because it was under no obligation to do so pursuant to the Federal Rules of Civil Procedure.  According to Rule 13, a counterclaim is not compulsory if "at the time the action was commenced the claim was the subject of another pending action."  Fed. R. Civ. P. 13(a)(1).  Here, Lantech's Law 6209 claim was the subject of the Costa Rican suit pending at the time that Canonlat brought its claims in the district court.  As such, it was not a compulsory counterclaim.

While we agree with Canonlat that the two actions are somewhat similar, Canonlat has not shown that the resolution of its claims in the district court would actually dispose of Lantech's claim in Costa Rica. The district court conceded as much in its discussion of the issue but concluded nevertheless that the cases were "sufficiently similar" to justify an anti-suit injunction because "the effect and enforceability of the Agreement [were] placed directly at issue in the Costa Rican action." Whether or not the cases are similar is not the legal standard, however. On the contrary, the standard, even according to Gallo upon which the district court mostly relied, is "whether or not the first action is dispositive of the action to be enjoined." Gallo, 446 F.3d at 991 (internal quotation marks omitted) (emphasis added). That the district court regarded the "dispositive" requirement as merely an "additional factor" in some courts, and not as a prerequisite, is therefore legal error that constitutes an abuse of discretion. Because we conclude that the second threshold requirement is not satisfied, the permanent injunction is improper.[10] Accordingly, we vacate the injunction and remand the case for dismissal of Counts I and II in accordance with this opinion.

---

[10] Lantech challenges the district court's decision granting declaratory judgment on the validity and enforceability of the forum selection clause only to the extent that such a declaration would weigh in favor of the injunction. Because the anti-suit injunction is in error for reasons separate and apart from the actual validity and enforceability of the forum selection clause, we agree with Lantech that the dispute on appeal over Canonlat's Count I declaratory action is moot.

**VACATE and REMAND.**