[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-10464
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 15, 2010
JOHN LEY
CLERK

D.C. Docket No. 1:05-cv-20863-KMM

SECURITIES AND EXCHANGE COMMISSION, et al.,

Plaintiffs,

JOSE PABLO URBINA SOLERA,

Claimant - Appellant,

versus

PENSION FUND OF AMERICA, L.C.,
PFA ASSURANCE GROUP, LTD,
PFA INTERNATIONAL, LTD,
CLAREN TPA, LLC,
LUIS M. CORNIDE, et al.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 15, 2010)

Before BLACK, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Jose Pablo Urbina Solera, proceeding pro se, appeals the district court's order holding him in contempt for failing to comply with an anti-suit injunction.

## I.

The Securities and Exchange Commission filed an enforcement action against the Pension Fund of America and related entities (collectively, the "Pension Fund"), and its two principals, alleging that the Pension Fund defrauded investors through the sale of "retirement trust plans" in violation of federal law. The district court appointed Thomas Schultz to serve as receiver over the Pension Fund and charged him with "marshal[ing] and safeguard[ing] all of the assets of [the Pension Fund]" for the benefit of defrauded investors and other legitimate creditors.

The district court approved a claims procedure for distributing the receivership estate to defrauded investors. Each claimant was to file a proof of claim form with the Receiver. In 2007 Solera filed a proof of claim form seeking to recover from the receivership estate $8,030,000 that he claimed to have invested in the Pension Fund. Solera alleged that he had provided five checks to Carlos Ruiz, the Pension Fund's Regional Director for Costa Rica, for investment in the

Pension Fund. The checks were drawn on the Clearwater, Florida SunTrust Bank checking account of Harlon Parchment, and were made payable to Solera.

The Receiver opposed Solera's claim. In support of his position, the Receiver produced evidence that the SunTrust account on which the checks were drawn never had a balance even close to the amount Solera claimed to have invested with the Pension Fund. The Receiver also produced an affidavit from Harlon Parchment. In the affidavit, Parchment explained that the signature on the checks was not his, and he expressed his belief that Solera had forged his signature on the checks.

The district court rejected Solera's claim. Solera filed a motion for reconsideration, which the district court denied. Solera appealed from the denial of his motion for reconsideration. We affirmed. See S.E.C. v. Pension Fund of America, Inc., No. 09-12125, 2010 WL 1915161 (11th Cir. May 13, 2010).

In January 2009 the Receiver moved the district court to enjoin Solera from proceeding with the civil components of two criminal lawsuits Solera initiated in the courts of his native Costa Rica. The Receiver provided an affidavit from a Costa Rican attorney explaining that a criminal proceeding in Costa Rica has two components: a criminal component handled by a government prosecutor and a civil component, known as a "civil action." The civil action, although filed in a

criminal court, is a proceeding pursued by a private party, known as the "civil actor," who "has an economic claim for alleged damages against the defendant." The two components may proceed independently of each other.

The Receiver established that Solera was the civil actor in two criminal proceedings relating to his alleged investment in the Pension Fund. Solera filed the first action in 2006. In that civil action, Solera accused Ruiz of fraud, wrongful retention, and "ideological forgery" in violation of the Costa Rican criminal code. In the 2006 Civil Action, Solera sought $8,030,000 in damages. As he did in the claim form he filed with the Receiver, Solera alleged that he had provided a total of five checks to Ruiz for investment in the Pension Fund. The first group of three checks totaled $7,900,000, and the other two checks totaled $130,000. Solera alleged that the Pension Fund delayed cashing the first three checks, so insufficient funds remained in Parchment's account when the checks were presented to the bank for payment. Those checks were returned to Solera by the Pension Fund. He alleged that the Pension Fund lost the other two checks.

The second action was filed in 2009. Solera, again acting as the civil actor in a criminal proceeding, sought to recover $130,000 from the Receiver. He accused the Receiver of committing the felony of wrongful retention. Solera alleged that the Pension fund lost the two checks totaling $130,000 and that those

4

checks were never returned to him. The allegations in the two Costa Rican civil actions mirrored Solera's earlier unsuccessful claim against the receivership estate: He again alleged that he provided five checks, totaling $8,030,000 and drawn on the account of Harlon Parchment, to Ruiz for investment in the Pension Fund.

The district court issued the anti-suit injunction. In that injunction, the district court specifically ordered Solera to "take all steps necessary to withdraw all pleadings in the civil actions in Costa Rica." S.E.C. v. Pension Fund of America, L.C., 613 F. Supp. 2d 1341, 1347 (S.D. Fla. 2009). The district court explicitly excluded the criminal component of the Costa Rican proceedings from the coverage of the injunction. Id. Solera withdrew the civil action against the Receiver but did not withdraw the civil action against Ruiz.

On May 18, 2009, the Receiver filed a motion seeking an order requiring Solera to show cause why he should not be held in contempt for violating the anti-suit injunction. On June 16, the district court issued an order to show cause. In that order, the district court determined that the Receiver had made a prima facie showing of contempt, and the burden had shifted to Solera to either explain his noncompliance with the injunction or to comply with it by withdrawing the civil action against Ruiz. The district court also ordered Solera to attend a show

5

cause hearing. Solera did not withdraw the civil action against Ruiz. Instead, he filed a letter with the district court arguing that the district court had no right to enjoin the Costa Rican civil action against Ruiz.

On August 20, the district court held the show cause hearing. Solera did not attend. The district court held Solera in contempt based on his failure to withdraw the Costa Rican civil action against Ruiz and his failure to attend the show cause hearing. In its judgment of contempt, the district court ordered Solera to pay to the Receiver $120,792.67. According to the district court, the sanctions were designed to compensate the Receiver for fees and costs incurred by the Receiver related to the Costa Rican lawsuits, the anti-suit injunction, the order to show cause, and the show cause hearing. Solera appeals.

## II.

In reviewing a contempt judgment, we must first determine whether the nature of the contempt proceeding was civil or criminal. Afro-American Patrolman's League v. City of Atlanta, 817 F.2d 719, 723 n. 3 (11th Cir. 1987). Because the sanctions the district court imposed on Solera for violating the anti-suit injunction were remedial in nature, that aspect of the contempt sanction is civil. See Serra Chevrolet v. Gen. Motors, Inc., 446 F.3d 1137, 1147 (2006).

We review the grant of a motion for civil contempt for an abuse of

discretion, <u>McGregor v. Chierico</u>, 206 F.3d 1378, 1383 (11th Cir. 2000), and "we review findings of fact arising out of contempt proceedings under the clearly erroneous standard." <u>Doe v. Bush</u>, 261 F.3d 1037, 1047 (11th Cir. 2001). A finding of civil contempt must be supported by clear and convincing evidence. <u>Riccard v. Prudential Ins. Co.</u>, 307 F.3d 1277, 1296 (11th Cir. 2002). The clear and convincing evidence "must establish that an order was violated." <u>Jove Eng'g v. I.R.S.</u>, 92 F.3d 1539, 1545 (11th Cir. 1996) (quotation marks and citations omitted). The clear and convincing evidence must also establish that: (1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order. <u>Id.</u>

Because Solera is proceeding <u>pro se</u>, we construe his brief liberally. <u>Mederos v. United States</u>, 218 F.3d 1252, 1254 (11th Cir. 2000). Solera argues that the district court's anti-suit injunction was invalid insofar as it enjoined his suit against Ruiz. We must determine the validity of the anti-suit injunction because "[a] judgment of civil contempt, being remedial in nature, stands or falls with the validity or invalidity of the [underlying] order, and the opposing party should be compensated only if he was entitled to the order . . . ." <u>Lewis v. S.S.</u>

7

Baune, 534 F.2d 1115, 1119 (5th Cir. 1976);[1] see also United States v. United Mine Workers of Am., 330 U.S. 258, 294–95, 67 S. Ct. 677, 696 (1947) ("It does not follow of course, that simply because a defendant may be punished for criminal contempt for disobedience of an order later set aside on appeal, that the plaintiff in the action may profit by way of a fine imposed in a simultaneous proceeding for civil contempt based upon the same order. The right to remedial relief falls with an injunction which events prove was erroneously issued.").

"[F]ederal courts have some power to enjoin foreign suits by persons subject to federal jurisdiction." Canon Latin Am., Inc. v. Lantech (CR), S.A., 508 F.3d 597, 601 (11th Cir. 2007). However, a district court may issue an injunction barring the parties before it from participating in foreign litigation only if: "(1) the parties are the same in both the foreign and domestic lawsuits, and (2) resolution of the case before the enjoining court is dispositive of the action to be enjoined." Id. (brackets and quotation marks omitted).

The first threshold requirement is not met here—the parties before the enjoining court are not the same as the parties in the Costa Rican civil action. In the case before the district court, Solera and the Receiver are the parties. In the

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Costa Rican civil action, Solera is the civil actor and Ruiz is the defendant. The Receiver and Ruiz are obviously not literally the same party.

The Receiver, parroting the district court's order granting the injunction, argues that the parties are nevertheless the same in both the domestic and foreign litigation because "[Solera] has sued [Ruiz] as representative for [the Pension Fund], one of the Receivership Entities." See Pension Fund, 613 F. Supp. 2d at 1345. The district court reasoned that, because Solera sued Ruiz as representative for the Pension Fund "[t]he Receivership Entities are . . . potentially liable for any damages ultimately awarded in" Solera's Costa Rican civil action against Ruiz, and that "the Receiver's interests are [therefore] aligned with [Ruiz's], and are implicated to such an extent that" the Receiver and Ruiz qualify as the same party for the purpose of issuing an injunction barring foreign litigation.

We disagree. It is true that Solera's factual allegations in the Costa Rican civil action against Ruiz mirror the allegations he made in the claims proceeding before the district court. It is also true that Solera seeks to hold Ruiz liable for damages he allegedly caused while serving as a Regional Manager for the Pension Fund. However, our review of the record reveals no evidence that Solera sued Ruiz "as representative for [the Pension Fund]" or that, under Costa Rican law, "[t]he Receivership Entities are . . . potentially liable for any damages ultimately

9

awarded" to Solera in the Costa Rican civil action against Ruiz. <u>Pension Fund</u>, 613 F. Supp. 2d at 1345. While we note that there is no evidence of those circumstances in this record, we express no view on whether those circumstances, if supported by the record, would be enough to make the Receiver and Ruiz effectively the same party for the purpose of satisfying the first prerequisite to the issuance of an injunction barring foreign litigation. <u>See</u> <u>Canon</u>, 508 F.3d at 601.

Furthermore, without evidence that Solera is seeking to recover funds only from the receivership estate in his Costa Rican civil action against Ruiz, the action before the district court cannot be "dispositive" of the Costa Rican civil action. <u>See</u> <u>id.</u> at 601 & n.8. The record contains no such evidence. Instead, all that the record establishes is that, before he ever submitted a claim seeking to recover from the receivership estate, Solera initiated a civil action in Costa Rica against Ruiz seeking to hold Ruiz personally responsible for losses that Solera alleges he sustained because of Ruiz's actions. The interests of comity demand more than a showing that the claims before the district court are similar to the claims in the Costa Rican civil action. <u>Id.</u>

Because neither of the threshold requirements for the issuance of an anti-suit injunction have been met, <u>id.</u> at 601, the Receiver has failed to establish by clear and convincing evidence that the anti-suit injunction was "valid and lawful"

10

as applied to Solera's Costa Rican civil action against Ruiz. Jove Eng'g, 92 F.3d at 1545. To the extent that it rested upon Solera's violation of the anti-suit injunction, the district court's contempt order must be vacated.

However, the district court's order finding Solera in contempt did not rest entirely on his violation of the anti-suit injunction; the district court's finding of contempt was also based on Solera's failure to attend the show cause hearing as required by the show cause order. Solera argues that the district court erred by holding him in contempt for failing to attend the show cause hearing because he "justified" his absence from the hearing.

The party seeking an order of contempt bears the initial burden of demonstrating by clear and convincing evidence that the alleged contemnor has violated a valid court order. Howard Johnson, Inc. v. Khimani, 892 F.2d 1512, 1516 (11th Cir. 1990). Once the party seeking the contempt order makes out a prima facie case, "the burden of production shifts to the alleged contemnor to show a present inability to comply that goes beyond a mere assertion of inability." Id. (quotation marks and citation omitted). To satisfy that burden, the party facing possible contempt sanctions must offer evidence supporting his claim. Citronelle-Mobile Gathering, Inc. v. Watkins, 943 F.2d 1297, 1301 (11th Cir. 1991) (quotation marks and citation omitted). A party subject to an order must show that

11

he has "made in good faith all reasonable efforts to comply." Id. (quotation marks and citation omitted); see also Combs v. Ryan's Coal Co., 785 F.2d 970, 984 (11th Cir. 1986) (discussing burden of proof and shifting burden of production in civil contempt proceedings). We review only for clear error a district court's factual finding about whether an alleged contemnor is able to comply with the order. Citronelle-Mobile, 943 F.2d at 1301.

There is no dispute that Solera failed to attend the hearing as required by the show cause order. Solera does not contend that the order was unlawful or that it was ambiguous. Instead, Solera argues that the district court erred when it found him in contempt because he demonstrated that he could not attend the show cause hearing. We disagree.

The district court did not err in determining that Solera failed to meet his burden of producing evidence that he was unable to comply with the district court's order. Solera filed two documents stating that he would be unable to attend the show cause hearing. The first is dated January 2008 and purports to be a letter from a doctor diagnosing Solera with "symptoms of acute stress disorder." Solera makes no effort to explain how a diagnosis of acute stress disorder in January 2008 foreclosed his attendance at a show cause hearing in August 2009. Solera filed the second document just one day before the show cause hearing.

12

That document is written in Spanish. It states that Solera had a doctor's appointment on the date of the show cause hearing. Notably, the "diagnosis" portion of the form does not state that Solera was suffering from any medical malady. It instead states only that Solera was a participant in a study. We strictly interpret the requirement that, in order to satisfy his burden of production, an alleged contemnor must produce evidence that he made "in good faith all reasonable efforts to comply" with the district court's order. Combs, 785 F.2d at 984. Solera's filings fall far short of satisfying that burden, so on those grounds he cannot avoid contempt for violating the show cause order.

### III.

As we have already explained, the district court erred by finding Solera in contempt for violating the anti-suit injunction. Thus, the part of the finding of contempt against Solera that survives rests solely on his failure to attend the show cause hearing.

The problem is that the district court actually imposed a criminal (instead of a civil) contempt sanction on Solera when, based on his failure to attend the show cause hearing, it ordered him to pay the fees and costs incurred by the Receiver related to that hearing. The sanction imposed was neither coercive nor compensatory. It was not coercive because when the district court entered the

contempt order, the show cause hearing had already occurred, so Solera could not be coerced into attending it. See In re E.I. DuPont De Nemours& Co.–Benlate Litigation, 99 F.3d 363, 369 (11th Cir. 1996). And the sanction was not compensatory because there was no harm requiring compensation—the Receiver would have prepared for and attended the show cause hearing even if Solera had shown up. In fact, that hearing would have taken longer and would have cost more if Solera had shown up. Because that part of the sanction award was neither coercive nor compensatory, it was punitive in nature. See id. ("[T]he sanctions imposed by the district court were neither compensatory nor coercive in nature, but instead were designed to punish [the contemnor] for flouting the authority of the district court.").

A "district court may not use the civil contempt power to impose what amounts to a punitive or criminal contempt sanction." United States v. City of Miami, 195 F.3d 1292, 1298 (11th Cir. 1999); see also Dupont, 99 F.3d at 369 (holding that the district court committed reversible error by imposing criminal sanctions in a civil proceeding, which "did not afford [the contemnor] the procedural protections the Constitution requires for the imposition of criminal contempt sanctions"). Because the district court imposed what amounted to a punitive contempt sanction in a civil proceeding, its order must be vacated. See

14

DuPont, 99 F.3d at 368 ("'[A] district court may not, even unwittingly, employ a civil contempt proceeding to impose what, in law, amounts to a criminal contempt sanction.'") (quoting Blalock v. United States, 844 F.2d 1546, 1560 n. 20 (11th Cir. 1988) (per curiam) (Tjoflat, J., specially concurring)).

The district court is free on remand to decide whether to institute the necessary procedures to determine whether to impose a criminal contempt sanction against Solera for failing to attend the show cause hearing on August 20, 2009. We also pass no judgment on whether the district court could exercise its inherent powers—separate and apart from contempt proceedings—to sanction Solera for his failure to comply with the district court's order to attend the show cause hearing.  See, e.g., In re Sunshine Jr. Stores, Inc., 456 F.3d 1291, 1305 (11th Cir. 2006) (explaining that a district court has the discretion to exercise its inherent powers, and "[a] primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.").

The district court's order finding Solera in contempt and awarding sanctions to the Receiver is **VACATED**, and the case is remanded for further proceedings consistent with this opinion.