# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 6, 2020

Lyle W. Cayce
Clerk

No. 19-51064

MWK Recruiting Incorporated,

*Plaintiff—Appellee*,

*versus*

Evan P. Jowers,

*Defendant—Appellant*,

*versus*

Michelle W. Kinney; Kinney Recruiting, Limited; Recruiting Partners GP, Incorporated; Counsel Unlimited, L.L.C.; Robert E. Kinney; Kinney Recruiting, L.L.C.,

*Third Party Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:18-CV-444

Before Smith, Higginson, and Engelhardt, *Circuit Judges*.

Per Curiam:*

Defendant-Appellant Evan P. Jowers appeals an antisuit injunction against related litigation commenced by Jowers in Hong Kong. For the reasons stated herein, we VACATE AND REMAND.

## I.

Evan P. Jowers is a former employee of a predecessor entity of Plaintiff-Appellee MWK Recruiting, Inc. ("MWK").[1] Having been sued in Texas for alleged misdeeds (including misappropriation of trade secrets) in connection with his (former) employment, Jowers sought to open a second litigation front by suing his former employer and its principal, Kinney Recruiting Ltd., H.K. and Robert Kinney, for defamation in Hong Kong. On November 12, 2019, however, the district court in the instant action granted a motion for a foreign antisuit injunction filed by the "MWK Parties"— MWK, Robert Kinney, Kinney Recruiting Limited, Michelle Kinney, Recruiting Parties GP, Inc., Kinney Recruiting LLC, and Counsel Unlimited LLC. Although the Hong Kong defamation suit is premised upon communications made *after* Jowers' employment had ended, the district court found that adjudication of the issues in the Hong Kong defamation case necessarily would duplicate determinations that the district court would be making regarding the merits of the employer's claims asserted in the instant action.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

[1] According to MWK: "All the claims in this case against Jowers have been assigned from Jowers's former employers and lenders to MWK. For the sake of clarity, although Jowers never worked directly for MWK, references to Jowers's employer will be references to MWK unless greater precision is required to convey the essential point."

No. 19-51064

Accordingly, the district court ordered Jowers "and all persons in active concert or participation with him who have actual notice of this injunction" to "dismiss their claims in the Hong Kong litigation." The district court additionally ruled that:

> Jowers is enjoined from seeking relief in the Hong Kong litigation that would preclude the MWK [Parties] from proceeding in this case or would interfere in any way with this Court's jurisdiction over this matter, pursuing adjudication of any claims or issues in the Hong Kong litigation that are pending for adjudication in this case, participating in any way in the Hong Kong litigation, and filing any additional cases that would violate the prohibitions set forth in this Order.

On November 19, 2019, Jowers filed his notice of appeal.

Thereafter, on December 11, 2019, the district court considered a motion filed by Jowers requesting that the November 12, 2019 injunction be stayed pending appeal. Although the district court denied the request, it modified the injunction such that Jowers was allowed to stay, rather than immediately dismiss, the Hong Kong case against Kinney, pending this court's mandate in his appeal. The district court added: "Jowers shall not take any other action in the Hong Kong case that would advance it unless strictly necessary to prevent dismissal."

## II.

Even though "the ultimate decision whether to grant or deny a preliminary injunction is reviewed only for abuse of discretion, a decision grounded in erroneous legal principles is reviewed *de novo*." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003) (cleaned up).

3

## III.

It is well established that federal courts are empowered to enjoin persons subject to their jurisdiction from prosecuting foreign suits. *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 626 (5th Cir. 1996). Generally, to obtain a preliminary injunction, a movant must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any potential harm to the non-movant; and (4) that the injunction will not undermine the public interest. *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997). For a court to grant a permanent injunction, a plaintiff must succeed on the merits, in addition to demonstrating the other three factors. *See Amoco Prod. Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987). Injunctive relief is considered an extraordinary remedy, to be granted only when the movant has "clearly carried the burden of persuasion" on all four requirements. *Karaha Bodas*, 335 F.3d at 363 (cleaned up).

A foreign antisuit injunction is a special application of these injunction rules. *See id.* at 364 (noting that a foreign antisuit injunction is a "particular subspecies of preliminary injunction"). Thus, "the suitability of such relief ultimately depends on considerations unique to antisuit injunctions." *Id.* The Fifth Circuit has adopted a test that weighs "the need to 'prevent vexatious or oppressive litigation' and to 'protect the court's jurisdiction' against the need to defer to principles of international comity." *Id.* (citing *Kaepa*, 76 F.3d at 627, and *MacPhail v. Oceaneering Int'l, Inc.*, 302 F.3d 274, 277 (5th Cir. 2002)). An injunction against the prosecution of a foreign lawsuit may be appropriate when the foreign litigation would: (1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's in rem or quasi in rem jurisdiction; or (4) cause prejudice or offend other equitable principles. *Kaepa*, 76 F.3d at 627 n.9 (citing *In re Unterweser Reederei, Gmbh,* 428 F.2d 888, 890 (5th Cir. 1970)). In applying the

test, this court has rejected the approach taken by some other circuits, which "elevates principles of international comity to the virtual exclusion of essentially all other considerations." *Kaepa*, 76 F.3d at 627. Instead, the Fifth Circuit has noted that "notions of comity do not wholly dominate [the] analysis to the exclusion of these other concerns." *Karaha Bodas*, 335 F.3d at 366.

To determine whether proceedings in another forum constitute "vexatious or oppressive" litigation that threatens the court's jurisdiction, the domestic court considers whether the following interrelated factors are present: (1) inequitable hardship resulting from the foreign suit; (2) the foreign suit's ability to frustrate and delay the speedy and efficient determination of the cause; and (3) the extent to which the foreign suit is duplicative of the litigation in the United States. *Kaepa*, 76 F.3d at 627.

In granting Jowers' motion, the district court referenced the considerations delineated in *Karaha Bodas*. Although it determined that litigating in Hong Kong would *not* pose an inequitable hardship to the MWK entities, and the Hong Kong suit would *not* frustrate and delay the district court's determination in the domestic case, it concluded the claims in the Hong Kong suit "substantially and logically duplicate" those in the domestic case. Based on this assessment, the district court found the Hong Kong suit to be vexatious and oppressive. It additionally concluded that granting a foreign antisuit injunction would not harm "valid interests in preserving international comity, as the Fifth Circuit has explained them."

Regarding these conclusions, the district court reasoned, in pertinent part:

> The extent to which the Hong Kong suit duplicates this case is a closer call. Ultimately, however, the Court holds that the Hong Kong suit is intrinsically linked to this case—so much so that it is fair to say the Hong Kong suit effectively duplicates this case and is properly considered vexatious and oppressive as a result.

. . . .

. . . [T]he *Sindhi* [*v. Raina*, No. 3:15-CV3229-D, 2018 WL 1964198, at *2 (N.D. Tex. Apr. 26, 2018)] court recognized that "the Fifth Circuit has not explicitly adopted the compulsory counterclaim rule," [but] nevertheless found "the compulsory counterclaim standard instructive in defining whether foreign litigation is duplicative and vexatious." It then proceeded by "assess[ing] whether the claims in the [foreign] suit bear a logical relationship to the claims in the [domestic] suit" . . . without determining "whether the [foreign] claims are compulsory counterclaims under Rule 13(a)." *Id.* That standard dictates that a counterclaim is compulsory when "the same operative facts[] serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant." *Id.* (quoting *United States v. Aronson*, 617 F.2d 119, 121 (5th Cir. 1980)).

. . . The Court agrees that this approach is appropriately "consistent with the purpose of [Federal Rule of Civil Procedure] 13, which is to 'prevent multiplicity of actions and to achieve resolution in a single suit of all disputes arising out of common matters." *Kaepa,* 76 F.3d at 628 n.14.

In *Sindhi*, the foreign suit involved defamation claims, by the domestic defendant against the domestic plaintiff, "relat[ing] to the same factual allegations underlying" the foreign suit: that the domestic defendant had stolen proprietary and confidential information during his employment to "create a substantially similar competing" product." *Id.*, [*sic*] at *3. On these facts, the court determined a logical relationship existed and issued an antisuit injunction restraining the foreign claims that duplicated their domestic counterparts. *Id.*

Here, the Hong Kong suit (which consists solely of defamation claims at this point) appears to concern statements made by Kinney to Jowers's potential clients and business partners concerning Kinney's view of Jowers's conduct during Jowers's employment by Kinney. In other words, the Hong

No. 19-51064

Kong suit appears to *exclusively* involve claims about Jowers's conduct during his employment—the precise subject of the domestic case. The same operative facts serve as the basis of both sets of claims; a logical relationship exists between them. As a result, the Court finds that the Hong Kong suit duplicates the domestic case and is therefore appropriately deemed vexatious and oppressive.

. . . .

Finally, concerns of international comity do not bar, or even counsel much against, the Court's issuing a foreign antisuit injunction. True, this is not a case in which a final judgment has been issued in the domestic court, lessening comity-related concerns of impinging on the foreign court's jurisdiction. *See Karaha Bodas*, 335 F.3d at 371. But here, "no public international party is implicated by the case," which ultimately involves "a private party engaged in a contractual dispute with another private party." *Kaepa*, 76 F.3d at 627. And "the dispute has been long and firmly ensconced within the confines of the United States judicial system": Jowers "appeared in an action brought in Texas, removed that action to a federal court in Texas . . . and only then, with the federal action moving steadily toward trial," brought logically related claims in Hong Kong. *Id.* Like in *Kaepa*, nothing about an injunction "actually threatens relations between the United States and" Hong Kong. *Id.* Especially given the Fifth Circuit's stance highlighting that comity concerns are not paramount, *see Karaha Bodas*, 335 F.3d at 366, comity concerns do not impose an obstacle to a foreign antisuit injunction here.

The district court thus concluded that the logical-relationship test was the appropriate method for ascertaining whether the Hong Kong suit was duplicative. Reviewing that legal conclusion *de novo*, we conclude, for two reasons, that the court erred in applying the logical-relationship test.

First, application of the logical-relationship test is inconsistent with our precedents. That test allows a court to conclude—as the district court

7

did here—that two claims are duplicative so long as they share underlying "operative facts." *Sindhi*, 2018 WL 1964198, at *2 (cleaned up). But the duplicative factor is about *legal*, not *factual*, similarity. We find suits to be duplicative where they involve the "same or similar legal bases," *Karaha Bodas*, 335 F.3d at 370, or "identical claims," *Kaepa*, 76 F.3d at 627.[2] For instance, in *Kaepa*, the foreign suit involved "mirror-image claims," because both the suit in the United States and the suit in Japan claimed fraudulent inducement and breach of contract. *Id.* at 626. On remand, the court should thus consider whether the United States and Hong Kong suits share the "same or similar legal bases," not whether facts about Jowers' employment are relevant to both suits. *Karaha Bodas*, 335 F.3d at 370.

Second, use of the logical-relationship test would erroneously increase the frequency of antisuit injunctions. It is well established that an antisuit injunction, like all preliminary injunctions, is "an extraordinary remedy." *Karaha Bodas*, 335 F.3d at 363 (cleaned up). Use of the logical-relationship test would make antisuit injunctions much more commonplace, given that only some relevant factual connection would render a foreign suit duplicative. Here, for instance, the district court based its injunction solely on the premise that the two suits shared some operative facts, even where the two other factors that help to establish vexatious or oppressive litigation— inequitable hardship along with frustration and delay—were admittedly

---

[2] *See also Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 430–31 (7th Cir. 1993) (finding "an absurd duplication of effort" where a party had "parallel lawsuits" in the United States and France). Although they do not apply the "duplicative" label, other circuits also impose a higher bar than "logical relationship," asking instead whether "resolution of the case before the enjoining court would be dispositive of the enjoined action." *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 653 (2d Cir. 2004) (cleaned up); *accord Canon Latin Am., Inc. v. Lantech (CR), S.A.*, 508 F.3d 597, 601 (11th Cir. 2007); *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 991 (9th Cir. 2006).

No. 19-51064

absent.[3] Reliance on the logical-relationship test, therefore, lowers the bar for antisuit injunctions, rendering them commonplace. That result is contrary to our precedent.

## IV.

Given the foregoing, we find it appropriate to vacate the district court's November 12, 2019 and December 11, 2019 orders and remand for further consideration and assessment—of the MWK Parties' motion for injunction—in accordance with this ruling.

VACATED AND REMANDED.

---

[3] The parties contest whether the presence of only one of the three vexatious or oppressive litigation factors is sufficient to buttress an antisuit injunction. **Blue Br.29; Red Br.23.** Because the district court erroneously applied the logical-relationship test in determining the duplicative factor, we do not reach the issue of whether the vexatious or oppressive litigation factors are conjunctive or disjunctive.